FILED
OCT 30 2025
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

IN THE MATTER OF THE ISSUANCE OF A CRIMINAL COMPLAINT AND ARREST WARRANT RE:

CHRISTOPHER CLOVIS-WEATHERS MONFISTON

**Under Seal**

Case No. 2:25-mj-249

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR CRIMINAL COMPLAINT**

I, Brian J. Pruitt, being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI), and have been so since October 2008. I am currently assigned to the Assistant Special Agent in Charge in Norfolk, Virginia. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). That is, I am an officer of the United States, who is empowered by law to conduct investigations regarding violations of United States law, to execute warrants issued under the authority of the United States, and to make arrests of the offenses enumerated in Title 18 of the United States Code.

2. As part of my employment with HSI, I attended the Criminal Investigator Training Program (CITP) a twelve-week basic program for all Federal criminal investigators held at the Federal Law Enforcement Training Center (FLETC) located in Glynco, Georgia. Additionally, I also attended Immigration & Customs Enforcement Special Agent Training (ICE SAT) an

additional eleven weeks of training also held at FLETC. During both courses, blocks of instruction were given on such subjects as basic investigative techniques; Federal controlled substances laws and types of controlled substances and recognition; methods how they are manufactured; transported across international borders; distributed and sold; money laundering techniques; electronic and physical surveillance techniques; and the application of constitutional law.

3. During the course of my law enforcement career, my duties have included the investigation of firearms offenses, narcotics offenses, and violent criminal offenses, *e.g.*, robberies. I have received law enforcement training on the investigation of firearms/narcotics offenses and have participated in several investigations involving firearms/narcotics offenses and the seizure of firearms.

4. I submit this affidavit in support of the issuance of a criminal complaint and arrest warrant for Christopher Clovis-Weathers MONFISTON (hereinafter referred to as MONFISTON) since there is probable cause to believe that on or about February 13, 2024 in the County of Accomack, within the Eastern District of Virginia, MONFISTON did knowingly and intentionally possess ammunition in violation of Title 18, United States Code § 922(g)(1), possession of a ammunition by an individual convicted of a crime punishable by more than one year in prison.

5. I am only submitting those facts which I believe are necessary to establish probable cause in this matter. This affidavit should not be construed as a complete statement of all the information generated from the investigation. I have become aware of the facts and circumstances described below through my personal observation, reports completed by Accomack County Sheriff's Office (ACSO), and information provided by law enforcement officers.

**FACTS SUPPORTING PROBABLE CAUSE**

6. Section 922(g)(1) of Title 18 of the United States Code provides, in part, that, "It shall be unlawful for any person . . . who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition."

7. MONFISTON was born in March 1992. Prior to February 13, 2024, MONFISTON was convicted of a felony offense punishable by more than one year in prison. Specifically, on or about February 14, 2014, MONFISTON was convicted of Malicious Shooting, Use of a Firearm, and Gang Participation, for offenses committed on or about March 17, 2013 in Accomack Circuit Court. On February 14, 2014, MONFISTON was approximately 21 years old. The investigative team has not found any records showing that MONFISTON's right to possess a firearm or ammunition has been restored.

8. On February 13, 2024, Accomack County Sheriff's Office (ACSO) responded to a call for "shots fired" at approximately 8:30 p.m. in the vicinity of a trailer park, located on Stumpy Lane in the Onancock area of Accomack County, Virginia. Upon arrival, deputies found the body of R.B. face down in the driveway of a residence on Stumpy Lane, in Onancock, Virginia ("the Stumpy Lane Residence"). Upon arrival, Emergency Medical Services (EMS) declared R.B. deceased at the scene. Accomack County Sheriff's Office began to investigate the R.B. homicide.

9. Deputies from ACSO processed the crime scene and collected evidence which included 15 (fifteen) 9mm cartridge casings and 10 (ten) .40 caliber cartridge casings.

10. From the beginning of the investigation, investigators sought to determine whether the R.B. homicide was related to a series of recent shootings and acts of violence suspected to be committed by members of the "Makk Balla Family" or the "Immaculate Balla Family" or "MBF"

gang. This gang has an active presence on the Eastern Shore and has been associated with acts of violence in recent years. An uncharged co-conspirator (UC1) is a member of Makk Balla Family and was one of the initial potential suspects in the R.B. homicide.

11. The investigative team also attempted to determine which vehicles were in the area during the time of the homicide. A member of the investigative team reviewed Flock camera data during the time of the homicide. A Flock camera is a type of license plate reader (LPR) camera that captures images of passing vehicles to identify them by their license plates and other unique characteristics. These cameras use artificial intelligence to analyze the captured data, which is then sent to a central server, allowing law enforcement to find stolen vehicles, missing persons, or vehicles associated with crimes by searching the data for specific information like make, model, color, and license plate number. A review of the data revealed that UC2's car was captured on multiple flock cameras in close proximity to the homicide scene. UC2 is a known associate of UC1 and is also a member of Makk Balla Family.

12. The investigative team also investigated which cellphones were present in the area during the homicide. On or about February 14, 2024, members of the investigative team submitted a preservation request to a Cellco Partnership doing business as ("d/b/a") Verizon Wireless for data, including, but not limited to, call detail records and Real Time Tool (RTT)/Timing Advance data for the site and sector areas during the time period before and after the R.B. homicide. RTT data stands for "round-trip time" and is how long it takes for a network request to travel from a starting point to a destination and back. Investigators received these records from Verizon on April 5, 2024. The investigative team sought this data because RTT data can provide law enforcement with geolocation information on a mobile device at a particular time. While not as precise as GPS,

this cellular data can be used to prove or disprove a suspect's alibi and corroborate witness statements.

13. On or about February 22, 2024, the investigative team followed up on this preservation request with a state search warrant for call detail records and RTT/Timing advance data the site and sector areas that cover the Stumpy Lane Residence from 7:30 p.m. to 9:30 p.m. EST on February 13, 2024.

14. MONFISTON is a known associate of UC1. The investigative team was aware of a separate shooting that occurred approximately two days prior to the R.B. homicide also in the Stumpy Lane area. The target of that shooting was unharmed but his vehicle was struck by bullets. The target of that shooting is a relative of MONFISTON. Therefore, investigators investigated whether MONFISTON was also present at the R.B. homicide.

15. As part of that investigation, the investigative team obtained phone numbers for MONFISTON and UC1 to compare to the cellular data they obtained. In April 2024, ACSO Investigators contacted Accomack Probation and Parole and learned that an uncharged co-conspirator (UC1) had provided a phone number ending in 1828 ("UC1's Phone") as his primary contact number and MONFISTON had provided a phone number ending in 2480 ("MONFISTON's Phone") as his primary contact number.

16. Investigators reviewed the RTT/cellular data provided by Verizon and observed UC1's Phone in the RTT data from the cellular towers that service the area of the homicide around the time of the homicide.

17. Investigators continued to investigate the phone data. Investigators obtained a state search warrant on April 16, 2024, for telecommunication records, including Call Detail Records (CDR) and cell site and sector data for the phone number UC1's from February 8, 2024, to

February 18, 2024. Investigators obtained these records on May 23, 2024, which revealed the subscriber listed was UC1's relative. A copy of these records was provided to the Federal Bureau of Investigation (FBI) who created Cellular Analysis Survey Team (CAST) analysis mapping the cell site sector data.

18. CDRs are log files containing meta data about phone calls including the time, duration, originating, and terminating numbers and cost. Key information included in CDRs includes the start and end times and dates of calls; the length of the call; the phone numbers or identifiers of the parties involved in the communication; whether the call was incoming, outgoing or missed; the cell tower or general location used during the call, if available; the cost associated with the call; and the outcome of the call, such as completed, busy, or unanswered. CAST is a specialized FBI unit that analyzes historical cell site data to provide geolocation for law enforcement investigations. The team uses data from cellular network providers to track the movement of suspects, locate missing persons, or find fugitives by mapping the historical signals of a phone to a user's location at a given time.

19. On November 20, 2024, investigators obtained a search warrant for CDRs with cell site and sector information for MONFISTON's Phone beginning February 10, 2024, and ending February 14, 2024. The results were received December 20, 2024, and the subscriber listed was UC1. Once received, this data was forwarded to the FBI to update the CAST presentation.

20. The data reveals that the cellphones believed to be in the possession of MONFISTON and UC1 traveled from the city of Virginia Beach the morning of February 13, 2024, to the Eastern Shore of Virginia and returned to Virginia Beach later that night. The following is summary of the data from February 13, 2024.

- 09:19:59 AM UC1 (1828) using a cell tower in Virginia Beach, Virginia receives an incoming call from MONFISTON (2480)
- 09:20:05 AM MONFISTION (2480) using a cell tower in Virginia Beach, Virginia places an outgoing call to UC1 (1828)
- 10:22:48 AM UC1 using a cell tower in Cape Charles, Virginia receives an incoming call from a phone number unknown to FBI CAST
- 10:49:24 AM MONFISTON (2480) using a cell tower near Eastville, Virginia received an incoming call from a phone number unknown to FBI CAST
- 11:26:16 AM UC1 using a cell tower near Parksley, Virginia received an incoming call from a phone number unknown to FBI CAST
- 11:36:20 AM MONFISTON using a cell tower near Parksley, Virginia received an incoming call from a phone number unknown to FBI CAST
- 9:19:00 PM MONFISTON using a cell tower near Tasley, Virginia placed an outgoing call to a phone number unknown to FBI CAST
- 9:46:39 PM UC1 using a cell tower near Nassawadox, Virginia placed an outgoing call to a phone number unknown to FBI CAST
- 10:01:00 PM MONFISTON using a cell tower near Cheriton, Virginia placed an outgoing call to a phone number unknown to FBI CAST
- 10:40:00 PM MONFISTON using a cell tower in Virginia Beach, Virgina placed an outgoing call to a phone number unknown to FBI CAST
- 10:58:31 PM UC1 using a cell tower in Virginia Beach, Virginia placed an outgoing call to a phone number unknown to FBI CAST

21. On December 17, 2024, law enforcement executed a state search warrant to search for evidence of the R.B. homicide and criminal street gang participation at UC1's residence in Virginia Beach. During the execution of this warrant, UC1's cellular device was seized and searched. Further investigation revealed that UC1 had changed his phone number after the R.B. homicide, but that this was the same device that had previously ended in phone number 1828 based on the device's IMEI, which is a unique 15-digit serial number assigned to a mobile device, similar to a digital fingerprint, used to identify it on a cellular network.

22. The investigation further revealed that on the morning of February 13, 2024, UC1's device had a brief text conversation with MONFISTON's device:

8:10 AM: MONFISTON's Phone: "We just need money for the bridge".

8:11 AM: UC1's Phone: "I got you"

8:11AM: UC1's Phone: "She got ez pass"

Your affiant is aware that the Chesapeake Bay Bridge-Tunnel has a toll and connects the mainland near Virginia Beach to the Eastern Shore.

23. Also, on December 17, 2024, law enforcement executed a state search warrant to search for evidence related to the R.B. homicide and criminal street gang participation at the MONFISTON's residence in Chesapeake, Virginia. The same day, law enforcement collected MONFISTON's DNA pursuant to a search warrant.

24. Law enforcement seized the following items from the residence: a 9mm Smith and Wesson pistol in the top left drawer of the bedroom dresser; a box of Magtech 9mm ammunition containing approximately 37 cartridges from the top left drawer of the bedroom dresser; (5) Federal .40 caliber cartridges in a Walmart bag in the top left drawer of the bedroom dresser; (2) 9mm cartridges in the kitchen drawer; and an empty yellow ammunition tray in the bottom left drawer

of the bedroom dresser. Mail addressed to MONFISTON at the Chesapeake residence was located in the drawer with the firearm and ammunition. Mail addressed to MONFISTON's girlfriend also living at the residence was also located in the same drawer where the firearm and ammunition was recovered. MONFISTON's girlfriend has since claimed ownership of the firearm, ammunition, and ammunition tray and stated that she typically stored the firearm in her vehicle.

25. The investigative team also investigated the forensics from the R.B. homicide. The cartridge casings discussed in paragraph 9 were turned over to the Bureau of Alcohol, Tobacco Firearms and Explosives (ATF) to assist in a forensic biology examination for potential DNA evidence left on the cartridge casings. ATF submitted the above-noted evidence to DNA Labs International. On or about July 3, 2024, DNA Labs International was able to a develop a suitable DNA profile for comparison on several of the .40 caliber cartridge casings. The lab further advised that they would be able to perform a DNA comparison upon submission of a reference standard from a suspect and/or other individual(s) of interest.

26. On or about August 28, 2025, DNA Labs International published a certificate of analysis in which the DNA profile of Christopher MONFISTON, which had been collected as described in paragraph 23, was compared to the DNA recovered from the .40 caliber cartridge casings found at R.B.'s homicide scene. This certificate of analysis stated that: "Christopher Monfiston cannot be excluded as a contributor to this DNA profile. The chance that an unrelated person, chosen at random from the general population, would be included as a contributor to this DNA profile is approximately 1 in every 1.2 septillion individuals."

27. Two of the ten .40 caliber cartridge casings recovered from the R.B. homicide scene, which were submitted for DNA analysis, were manufactured by Federal Ammunition and bore the head stamp "Federal .40 S&W". The five .40 caliber cartridges recovered during the

search warrant of MONFISTON's apartment were also manufactured by Federal Ammunition and bore the identical head stamp "Federal .40 S&W".

28. The .40 caliber cartridge casings recovered from the R.B. homicide scene were made by multiple ammunition manufacturers, none of which manufacture ammunition within the Commonwealth of Virginia.

29. The cartridge casings are "ammunition" as defined in Title 18, United States Code, Section 921(a)(17) and were manufactured outside the Commonwealth of Virginia. Therefore, the "ammunition" had previously traveled in interstate and/or foreign commerce.

30. Virginia Beach, Virginia, Chesapeake Virginia, and the Eastern Shore of Virginia, are all located in the Eastern District of Virginia.

**CONCLUSION**

31. I believe there is probable cause, based upon the aforementioned facts, that Christopher MONFISTON did possess .40 Caliber ammunition on or about February 13, 2024 in Accomack County Virginia.

32. Based on the forgoing, I respectfully request the Court issue an arrest warrant for Christopher Clovis-Weathers MONFISTON for possession of ammunition by a convicted felon, in violation of Title 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Brian J. Pruitt, Special Agent
Homeland Security Investigations

Read and Approved:

Megan M. Montoya
Assistant U.S. Attorney

FOR Kristen S. Taylor
Assistant U.S. Attorney

SWORN TO AND SUBSCRIBED
IN MY PRESENCE
This 30th day of October 2025

United States Magistrate Judge